Filed 10/19/20  AlSayyad v. Superior Court CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NEZAR AlSAYYAD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>    Defendant and Respondent;<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,<br><br>    Real Parties in Interest and Respondents. | A157389<br><br>(Alameda County<br>Super. Ct. No. RG18922143) |

Plaintiff Nezar AlSayyad filed a petition for writ of administrative mandamus directed to real parties in interest, Regents of the University of California and Chancellor of the University of California, Berkeley, seeking to reduce the term of his suspension from employment at the university. Pursuant to the university's policy on faculty conduct and the administration of discipline (University Policy), a subcommittee of the Academic Senate Committee on Privilege and Tenure (P&T Committee) conducted a three-day disciplinary hearing and found that AlSayyad had engaged in conduct violating sections of the university's code of conduct for faculty (Faculty Code

1

of Conduct) regarding sexual harassment of a student and unprofessional conduct toward colleagues.

The University Policy provides that the P&T Committee may make recommendations regarding proposed disciplinary sanctions but that the chancellor retains the sole discretion to impose various types of discipline on faculty members, including suspension and termination. Pursuant to that University Policy, the P&T Committee recommended a one-year suspension for AlSayyad, but Chancellor Carol Christ imposed a three-year suspension.

AlSayyad's petition did not challenge the process of the P&T Committee's hearing, the findings made by the P&T Committee, or the disciplinary procedures outlined in the University Policy. Instead, AlSayyad argued that Chancellor Christ's decision to impose a three-year suspension violated principles of procedural fairness because it was based on her own factual findings, which she made without personally observing the testimony of witnesses to assess their demeanor and credibility. AlSayyad also argued that Chancellor Christ's role in the administrative process violated principles of procedural fairness because she both brought the charges against AlSayyad and made the final decision on those charges. Finally, AlSayyad argued that the three-year suspension was an abuse of discretion because Chancellor Christ did not sufficiently explain her decision and because the penalty was excessive as a matter of law. The trial court denied the petition. AlSayyad appeals. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

AlSayyad became a professor of architecture at the University of California, Berkeley, in 1985. He became tenured in or around 1994. In March 2016, a graduate student submitted a written complaint regarding AlSayyad to the chair of the department of architecture. The complaint

alleged that AlSayyad had engaged in multiple incidents of sexual harassment of the student, including touching her on the thigh in October 2013. It also alleged that AlSayyad told the student that he had fought against other professors so the student would pass her May 2014 Ph.D. oral qualifying exam. The complaint alleged that AlSayyad had criticized other faculty members to the student as a way to isolate her and establish himself as her supporter and protector.

## A. Investigation

Shortly after the complaint was filed, the university retained a law firm to investigate the complaint. The firm interviewed witnesses (including AlSayyad and the student), reviewed documents, and issued a confidential investigation report (CI Report) on October 5, 2016. The CI Report found that AlSayyad had engaged in escalating personal behavior with the student, including the physical touching of her thigh. It also found that AlSayyad's communication pattern with the student had caused her to feel intimidated, isolated and reliant upon him. Specifically, it found that AlSayyad had referred to other faculty members as " 'vultures' " in an email to the student and had told the student that other faculty members were skeptical of her scholarly abilities. The CI Report concluded that there was sufficient evidence to refer the matter to Vice-Provost for the Faculty Benjamin Hermalin.

In November 2016, pursuant to paragraph 3 of the disciplinary procedures in the Faculty Code of Conduct, Vice-Provost Hermalin appointed two faculty investigators to determine whether there was probable cause to institute disciplinary proceedings against AlSayyad by filing a complaint with the P&T Committee. The faculty investigation included an in-person meeting with AlSayyad, a telephone interview with the student, and review

of the CI Report as well as additional documents. On March 15, 2017, pursuant to paragraph 5 of the disciplinary procedures in the Faculty Code of Conduct, the faculty investigators sent a letter to AlSayyad notifying him of their intent to report that there was probable cause AlSayyad engaged in faculty misconduct. The faculty investigators issued their report (FI Report) on April 19, 2017, finding that AlSayyad's touching of the student's thigh in October 2013 had occurred as the student alleged. The faculty investigators also found that the incident could be interpreted as an attempt to transition into a romantic or sexual relationship, and thus AlSayyad's subsequent criticisms of other faculty could constitute " 'grooming' " of the student. The FI Report concluded that there was probable cause that these actions did take place and that AlSayyad was in violation of the Faculty Code of Conduct.

On May 3, 2017, pursuant to paragraph 7 of the disciplinary procedures in the Faculty Code of Conduct, then-Interim Executive Vice-Chancellor and Provost (EVCP) Carol Christ[1] sent a letter to AlSayyad notifying him of her intent to lodge a complaint with the P&T Committee and propose his dismissal as the appropriate disciplinary sanction. The letter also advised AlSayyad that he could request mediation prior to the submission of charges to the P&T Committee. The letter was sent in accordance with university policy requiring that the EVCP provide such notice to a faculty member accused of misconduct.

## B. Complaint

On June 8, 2017, Vice-Provost Hermalin filed a complaint against AlSayyad with the P&T Committee. The complaint alleged four violations of

---

[1] Christ became Chancellor of the University of California, Berkeley, shortly thereafter.

4

the Faculty Code of Conduct:  (1) sexual harassment of a student (charge 1); (2) use of position or powers as a faculty member to coerce the judgment or conscience of a student for arbitrary or personal reasons (charge 2); (3) serious violation of the University of California Policy on Sexual Violence and Sexual Harassment (charge 3); and (4) failure to show due respect for opinions of colleagues and strive to be objective in the professional judgment of colleagues (charge 4).  The complaint recommended that AlSayyad be dismissed from his employment at the university.

## C.   P&T Hearing and Report

In November 2017, pursuant to University of California Bylaws of the Academic Senate, bylaw 336(D)(8), the P&T Committee conducted a three-day disciplinary hearing to determine whether the four charges against AlSayyad were supported by clear and convincing evidence.  The parties submitted 145 exhibits in total.  Sixteen witnesses were examined, including AlSayyad and the student.  After the hearing, the P&T Committee issued a report finding clear and convincing evidence to support charge 1, charge 3, and charge 4.  It did not find clear and convincing evidence to support charge 2.

On charge 1, the P&T Committee found the claim that AlSayyad touched the student's thigh in October 2013 to be supported by clear and convincing evidence and that the gesture created " 'an environment that a reasonable person would find to be intimidating or offensive.' "  (Boldface omitted.)  It also found that while some of the other incidents alleged by the student were corroborated—for example, hugging the student before her May 2014 oral qualifying exam and referring to her as a " 'bright woman' "—and "could be taken as chauvinistic and culturally insensitive," the evidence did

not clearly and convincingly support the claim that these other incidents involved sexual harassment.

On charge 2, the P&T Committee found that the evidence did not clearly and convincingly support the claim that AlSayyad used his power to coerce the judgment or conscience of the student for arbitrary or personal reasons.

On charge 3, the P&T Committee referred to its findings on charge 1 and found clear and convincing evidence to support the claim that AlSayyad "seriously" violated the University of California Policy on Sexual Violence and Sexual Harassment by touching the student's thigh in October 2013.

On charge 4, the P&T Committee found that clear and convincing evidence of AlSayyad's unprofessional conduct toward his colleagues in his email to the student where he referred to two other professors as " 'vultures.' "

In addition to factual findings, section III of the University Policy provides that the P&T Committee may make "recommendations to the Chancellor regarding proposed disciplinary sanctions." In accordance with this University Policy, the P&T Committee recommended that AlSayyad be suspended for one year without pay, that a letter of censure be placed in his personnel file, that he undergo sensitivity training, and that he engage in a process of reconciliation with members of the architecture department.

After the P&T Committee issued its report, AlSayyad submitted a response letter to Chancellor Christ on March 9, 2018.[2] In this letter, AlSayyad referred to his email describing his colleagues as " 'vultures' " as "a mistake for which I apologize . . . ." (Boldface omitted.) The letter also stated AlSayyad's continued position that his touching of the student's thigh in

---

[2] The letter is erroneously dated March 9, 2017.

6

October 2013 "would not suffice to prove a case of sexual harassment." (Boldface omitted.)

## D. Chancellor Decision

While the P&T Committee may make recommendations regarding disciplinary sanctions, section II of the University Policy provides that the chancellor retains the sole discretion to impose various types of discipline on a faculty member, including suspension and termination. Paragraph 4 of section II states: "Authority for the suspension of a faculty member rests with the Chancellor and may not be redelegated."

On August 13, 2018, Chancellor Christ sent a letter to AlSayyad with her disciplinary decision. It stated that Chancellor Christ had "carefully reviewed" the P&T Committee report; AlSayyad's March 9, 2018 letter; and "other documentation associated with the case, including exhibits, briefing by the parties, and the lengthy transcript of the hearing."

Chancellor Christ's letter summarized the findings of the P&T Committee on charges 1 through 4. Regarding charges 1 and 3, the letter states: "[M]y comprehensive assessment of the P&T Committee's report and the evidence in this case leads me to conclude that these violations of [the Faculty Code of Conduct] were quite serious, and that your *intention* about a sexual or romantic relationship is not germane in determining whether there was a pattern of sexual harassment."

The letter then states: "Based on my review of the evidence, I also find that your attempts to isolate the complainant from other faculty members, mischaracterization of what occurred in her oral qualifying exam, and effort to establish yourself as her most important supporter, [*sic*] were examples of using your power for personal gain."

7

The letter continues: "In considering the evidence in its totality, including the findings and recommendations of the P&T Committee, with which I generally concur, I find that your pattern of unwelcome, manipulative and divisive behavior was harmful to students and other faculty, and your continuing failure to accept responsibility for the impact of your behavior is troubling. My significant experience as a tenured faculty member and campus leader at the highest levels leads me to believe that a more serious sanction than what the hearing panel recommends is required in this matter. As a result, I am imposing the following discipline: a letter of censure and a three-year suspension without pay . . . . Should you elect to retire during the term of the three-year suspension, I will seek curtailment of your emeritus status under the terms of the suspension for the duration of the suspension." AlSayyad retired from the university with a retroactive date of July 31, 2018.

## E. Petition for Writ of Administrative Mandate

On September 25, 2018, AlSayyad filed a petition for writ of administrative mandate pursuant to Code of Civil Procedure section 1094.5 in the Superior Court of Alameda County. The petition sought, among other things, a reduction in AlSayyad's suspension from three years to one year.

AlSayyad's petition did not challenge the process of the P&T Committee's hearing, the findings made by the P&T Committee, or the disciplinary procedures outlined in the University Policy. Instead, AlSayyad argued that a writ was appropriate for three reasons: (1) Chancellor Christ's decision to impose a three-year suspension violated principles of procedural fairness because it was based on her own factual findings, which she made without personally observing the testimony of witnesses to assess their demeanor and credibility; (2) Chancellor Christ's role in the administrative

8

process violated principles of procedural fairness because she both brought the charges against AlSayyad and made the final decision on those charges; and (3) the three-year suspension was an abuse of discretion because Chancellor Christ did not sufficiently explain her decision and the penalty was excessive as a matter of law.

## F. Order Denying Petition

The trial court denied the petition, concluding that none of the three grounds had merit. It explained that Chancellor Christ's August 13, 2018 letter reflected that she reviewed the evidence and the P&T Committee's factual findings in reaching her decision. And while Chancellor Christ considered the facts "in a different light," her decision was still based on the evidence and the P&T Committee's factual findings. Chancellor Christ did not reach conflicting findings of fact regarding any contested issue that depended on the credibility of witnesses, "e.g., the incident in which AlSayyad touched his student's thigh." Accordingly, Chancellor Christ did not make any credibility determination without the benefit of live testimony that denied AlSayyad a fair administrative proceeding.

The trial court also explained that there was no dispute that the choice of AlSayyad's discipline was left to Chancellor Christ's discretion or that the three-year suspension was within the parameters of the relevant regulations. Accordingly, the trial court found that the three-year suspension was not an abuse of discretion.

This appeal followed.

## DISCUSSION

The role of an appellate court in reviewing a school disciplinary decision on a petition for writ of administrative mandamus is the same as that of the trial court. (*Doe v. University of Southern California* (2016) 246

9

Cal.App.4th 221, 239.)  Our inquiry on such a petition extends to questions as to whether there was a fair administrative proceeding and whether there was any prejudicial abuse of discretion.  (Code Civ. Proc., § 1094.5, subd. (b); see *Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1730 [explaining that the "fair trial" requirement of Code Civ. Proc., § 1094.5, subd. (b) is equivalent to a prescription that there be a fair administrative proceeding].)

We review a question regarding the fairness of an administrative proceeding de novo " 'because the ultimate determination of procedural fairness amounts to a question of law.' " (*Doe v. University of Southern California, supra,* 246 Cal.App.4th at p. 239, quoting *Nasha v. City of Los Angeles* (2004) 125 Cal.App.4th 470, 482.)  In the context of a school disciplinary process, fairness does not compel a particular rigid procedure, but instead may be satisfied by proceedings that afford the accused a full opportunity to present his or her position and defenses.  (*Doe v. Regents of University of California* (2016) 5 Cal.App.5th 1055, 1103–1104.)

We also review a question regarding abuse of discretion in the imposition of a particular penalty by an administrative body de novo. (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 627.) Abuse of discretion "is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)  Under this standard, we do not substitute our discretion for that of the administrative body regarding the degree of the penalty imposed.  (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46–47.) "It is only in the exceptional case, when it is shown that reasonable minds

cannot differ on the propriety of the penalty, that an abuse of discretion is shown." (*Id.* at p. 47.)

In this appeal, AlSayyad makes the same three arguments as in the trial court. First, AlSayyad argues that Chancellor Christ's decision violated principles of procedural fairness because she acted as a fact finder but did not personally view the testimony and evaluate the credibility of the witnesses. Second, AlSayyad argues that Chancellor Christ's role in the administrative process violated principles of procedural fairness because she both brought the charges against AlSayyad and made the final decision on those charges. Third, AlSayyad argues that the three-year suspension was a prejudicial abuse of discretion because Chancellor Christ did not sufficiently explain her decision and the penalty was excessive as a matter of law. We address each argument in turn.

## I. FAIRNESS AND CHANCELLOR AS FACT FINDER

AlSayyad first argues that Chancellor Christ's decision to impose a three-year suspension violated principles of procedural fairness because she made findings of fact without having personally observed the testimony of witnesses to assess their demeanor and determine their credibility. To support his argument, AlSayyad relies on a series of cases involving student disciplinary decisions for sexual misconduct at private and public universities.

In *Doe v. Claremont McKenna College* (2018) 25 Cal.App.5th 1055, 1058, 1063–1064, a student filed a petition for writ of administrative mandate seeking to challenge his one-year suspension based on a finding that he had engaged in nonconsensual sex with a female student from a neighboring college. That finding had been made by a review committee consisting of a third party investigator retained by the school and two

11

members of the faculty or staff.  (*Id.* at pp. 1061–1063.)  The school's grievance procedures did not require the female student to appear in front of the committee and did not provide for any questioning of either student by the committee or the parties themselves.  (*Id.* at p. 1063.)

The appellate court concluded that these procedures deprived the accused student of a fair hearing.  (*Doe v. Claremont McKenna College*, *supra*, 25 Cal.App.5th at pp. 1065–1066.)  It identified "a set of core principles applicable to cases where the accused student faces a severe penalty and the school's determination turns on the complaining witness's credibility."  (*Id.* at p. 1070.)  The appellate court articulated one such principle:  "[T]he complaining witness must be before the finder of fact either physically or through videoconference or like technology to enable the finder of fact to assess the complaining witness's credibility in responding to its own questions or those proposed by the accused student."  (*Ibid.*)  While the school contended that this principle did not apply because the case was not " 'a true he-said-she-said credibility contest,' " the appellate court rejected the argument.  (*Id.* at p. 1071.)  It reasoned that given there were no first-hand witnesses, the committee's finding of nonconsensual sex relied on the complainant's testimonial evidence and "certainly" turned on her credibility. (*Ibid.*)

This principle was subsequently applied in *Doe v. Allee* (2019) 30 Cal.App.5th 1036, 1039 (*Allee*), where a student filed a petition for writ of administrative mandate seeking to challenge his expulsion based on a finding that he had engaged in nonconsensual sex with another student at the University of Southern California.  The university's disciplinary procedures did not provide for any hearing or opportunity for the accused student to challenge the veracity of any witness against him.  (*Id.* at p. 1057.)

12

The appellate court concluded that the accused student was denied a fair hearing.  (*Allee, supra*, 30 Cal.App.5th at p. 1069.)  It reasoned:  " ' "A decision relating to the misconduct of a student requires a factual determination as to whether the conduct took place or not." ' "  (*Id.* at p. 1065.)  In *Allee*, the investigator determined that the two students had conflicting accounts of the incident that could not be reconciled.  (*Id.* at p. 1053.)  The appellate court concluded that in such circumstances where there are competing narratives regarding an incident, "some form of in-person questioning" is required to enable the fact finder to observe the witnesses' demeanors.  (*Id.* at p. 1066.)

AlSayyad argues, and real parties in interest explicitly assume for purposes of this analysis, that the principle from *Doe v. Claremont McKenna College* applies here.  Applying this principle, AlSayyad argues that he was entitled to have the fact finder assess the credibility of all the witnesses in his case, "especially" the credibility of the student and himself.  He argues that Chancellor Christ violated this principle of fairness by making factual findings without being able to personally assess witness credibility.  Accordingly, our determination of whether this fairness principle was violated turns on the question of whether Chancellor Christ made any findings of fact and, if so, whether those findings triggered a requirement that Chancellor Christ personally observe the witnesses to determine their demeanor and credibility.[3]

---

[3] Real parties in interest argue that the trial court made a "foundational factual finding[]" that Chancellor Christ did not act as a fact finder and that the trial court's finding should be reviewed for substantial evidence.  We do not find the argument persuasive.  The trial court found that Chancellor Christ did not "reach[] conflicting findings of fact regarding any contested issue that depends on the credibility of witnesses."  We conclude that this was not a foundational finding of fact but instead

13

AlSayyad points to four statements in Chancellor Christ's August 13, 2018 letter as evidence that Chancellor Christ made her own findings of fact that were contrary to the findings by the P&T Committee and required her to make credibility determinations regarding the witnesses. We address each argument in turn.

## A. Intention Not Germane to Sexual Harassment

Chancellor Christ's letter states, with regard to AlSayyad's violations of the Faculty Code of Conduct regarding sexual harassment, that the Chancellor concluded the violations were "quite serious" and that AlSayyad's "*intention* about a sexual or romantic relationship is not germane in determining whether there was a pattern of sexual harassment." AlSayyad argues that this statement suggests that Chancellor Christ made a factual finding that AlSayyad engaged in a pattern of sexual harassment, contrary to the P&T Committee's finding that AlSayyad's touching of the student's thigh in October 2013 was the only incident amounting to sexual harassment.

We disagree. As a preliminary matter, Chancellor Christ's letter explains that the P&T Committee "did not find [AlSayyad] to have engaged in a pattern of sexual harassment" and that Chancellor Christ "generally concur[red]" in the P&T Committee's findings. Moreover, as AlSayyad concedes, Chancellor Christ's statement that AlSayyad's intention was not germane accurately summarizes the university's standard for sexual harassment. Section II, subsection B.2 of the University of California Policy on Sexual Violence and Sexual Harassment defines sexual harassment as

answered the question of whether AlSayyad was denied a fair administrative proceeding. (See *Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1443 [explaining that questions as to procedural fairness are "essentially questions of law"].)

14

"unwelcome sexual advances," regardless of the perpetrator's intent to enter into a sexual or romantic relationship.

Nor are we persuaded by AlSayyad's argument that the inclusion of the phrase "I also find" in the next sentence of the letter suggests that Chancellor Christ made a finding that AlSayyad engaged in a pattern of sexual harassment. As described above, Chancellor Christ's statement of the standard regarding a pattern of sexual harassment was immediately preceded by her conclusion that AlSayyad's violations were "quite serious . . . ." Chancellor Christ's letter does not support the logical leap AlSayyad asks us to take: that this statement of the standard somehow evidences a factual finding that AlSayyad engaged in a pattern of sexual harassment. We conclude that this statement accurately reflected the university's standard regarding sexual harassment, and was not a factual finding.

**B. Pattern of Unwelcome, Manipulative and Divisive Behavior**

Chancellor Christ's letter states: "I find that your pattern of unwelcome, manipulative and divisive behavior was harmful to students and other faculty, and your continuing failure to accept responsibility for the impact of your behavior is troubling." AlSayyad argues that this statement indicates that Chancellor Christ made a factual finding contrary to the P&T Committee's findings on sexual harassment.

Again, we disagree. Chancellor Christ stated that AlSayyad engaged in a "pattern of unwelcome, manipulative and divisive behavior," *not* that he engaged in a pattern of sexual harassment. Chancellor Christ also described a pattern of behavior that was harmful to both students and "other faculty . . . ." Accordingly, the statement is more appropriately interpreted as a characterization of AlSayyad's behavior and the P&T Committee's findings

15

regarding that behavior: that AlSayyad engaged in sexual harassment against a student *and* engaged in unprofessional conduct toward his colleagues. We conclude that this statement was a characterization of the behavior as found by the P&T Committee, not a factual finding by Chancellor Christ.

### C. Mischaracterization of May 2014 Exam

Chancellor Christ's letter states: "Based on my review of the evidence, I also find that your attempts to isolate the complainant from other faculty members, mischaracterization of what occurred in her oral qualifying exam, and effort to establish yourself as her most important supporter, [*sic*] were examples of using your power for personal gain." AlSayyad argues that Chancellor Christ's statement shows that she made a factual finding that AlSayyad mischaracterized what occurred in the student's May 2014 oral qualifying exam, contrary to the P&T Committee's finding that the evidence "does not clearly and convincingly show that Professor AlSayyad made false comments to [the student] after the exam."

At the P&T Committee hearing, the student testified that after her May 2014 oral qualifying exam, AlSayyad told her that two professors thought she should not have passed but that AlSayyad fought for her. Another professor who also served as an examiner testified that the student subsequently followed up on the issue, and that professor responded to her that while the exam went well, one examiner thought that in some respects her answers had only glossed the surface of an issue. AlSayyad then testified that he told the student there had been a mixed reaction to her performance. He also testified that it was standard for him to tell students " 'I will save you' " as a way to explain how he can ask the type of questions during an oral qualifying exam that allow students to show their knowledge.

16

Handwritten notes from the exam committee chair were also introduced into evidence. The notes reflected that the first faculty member had assessed the student as "glib" and that the student had done less well on a particular section of the exam. The notes also reflected that the second faculty member thought the student had gotten some things "wrong," "mixed up" terminology, and had some problems.

Based on this evidence, the P&T Committee concluded that while AlSayyad's comments "may have been indiscreet" and "seem to have upset" the student, the comments appeared to align with the examiners' assessments of the student's performance. Because the P&T Committee determined that the evidence did not "clearly and convincingly show" that AlSayyad's comments were false, it concluded that the evidence "does not clearly support a charge that Professor AlSayyad used his powers to coerce [the student's] judgement [*sic*] for arbitrary or personal reasons."

Chancellor Christ's statement regarding AlSayyad's "mischaracterization of what occurred in her oral qualifying exam" does not show that she rejected the P&T Committee's factual finding that AlSayyad's comments appeared to align with the examiners' assessments. Nor does it show that she made a contrary factual finding that his comments as to their assessments were false. Instead, the letter shows that Chancellor Christ came to a different conclusion regarding how AlSayyad had characterized his impact on the exam outcome to the student: that she had passed because he had fought for her or saved her. Having reached that conclusion, she then refers to that mischaracterization as one of the "examples of using your power for personal gain."

Accordingly, we conclude that this statement constituted a conclusion regarding AlSayyad's comments regarding his impact on the student's exam,

17

not a factual finding by Chancellor Christ or a rejection of the P&T Committee's factual finding that his comments regarding the other examiners' assessments were accurate.

## D. Power for Personal Gain

AlSayyad's fourth argument relies on the same statement in Chancellor Christ's letter: "Based on my review of the evidence, I also find that your attempts to isolate the complainant from other faculty members, mischaracterization of what occurred in her oral qualifying exam, and effort to establish yourself as her most important supporter, were examples of using your power for personal gain." AlSayyad argues that Chancellor Christ made a factual finding that AlSayyad was "using [his] power for personal gain," contrary to the P&T Committee's finding on charge 2: that "[t]he evidence does not clearly and convincingly show that Professor AlSayyad used his power as a faculty member, qualifying exam committee member, or as chair of the graduate program, to coerce the judgment or conscience of [the student] or other students for arbitrary or personal reasons."

We disagree, as the statement is again more appropriately interpreted as a conclusion regarding AlSayyad's behavior. To the extent it refers to AlSayyad's attempt to isolate the student and establish himself as her most important supporter, it reflects findings by the P&T Committee regarding that behavior. For example, the P&T Committee found that AlSayyad had sent the student an email describing "two vultures in the architecture program who have target it [*sic*] you." To the extent it refers to AlSayyad's mischaracterization of the student's oral exam performance, Chancellor Christ's statement does not run afoul of fairness requirements for the reasons discussed above. In total, the statement shows that Chancellor Christ

18

reached a different conclusion regarding AlSayyad's use of power for personal gain. But that conclusion, in and of itself, is not a factual finding.

In sum, Chancellor Christ's statements did not constitute findings of fact and did not require Chancellor Christ to personally assess witness demeanor or credibility. We conclude that Chancellor Christ's statements do not support any violations of procedural fairness.

## II. FAIRNESS AND CHANCELLOR AS CHARGER AND DECIDER

AlSayyad argues next that Chancellor Christ's role in the administrative process violated principles of procedural fairness because she brought the charges against him and made the final decision on those charges. As a preliminary matter, the argument fails because Chancellor Christ did not bring the charges against AlSayyad. After the initial investigation by an outside firm, the matter was referred to Vice-Provost Hermalin, who then managed the faculty investigation. Pursuant to the university's disciplinary procedures, the faculty investigators sent AlSayyad the March 15, 2017 letter notifying him of their intent to report a determination of probable cause. As required by those same procedures, Chancellor Christ then sent AlSayyad the May 3, 2017 letter. The letter notified AlSayyad of her intent to lodge a complaint and propose his dismissal as the appropriate sanction, based on the faculty investigators' report and their recommendation that the P&T Committee have the ability to recommend the maximum sanction of dismissal. The letter also advised AlSayyad that he could request mediation prior to the submission of charges to the P&T Committee. The content of the letter thus shows that Chancellor Christ was involved as required by the university's procedures to provide notice to AlSayyad; it does not support AlSayyad's proposition that she played the role of charger in this process. Vice-Provost Hermalin, not

19

Chancellor Christ, charged AlSayyad by filing the complaint with the P&T Committee.[4]

Moreover, the circumstances in which courts have found a violation of procedural unfairness on this basis provide a stark contrast to Chancellor Christ's role here. In *Allee*, for example, the appellate court determined that the University of Southern California's disciplinary procedures violated the requirements of fundamental fairness because no in-person hearing was required under those procedures; the Title IX investigator "interviews witnesses, gathers other evidence, and prepares a written report in which the investigator acts as prosecutor and tribunal, making factual findings, deciding credibility, and imposing discipline." (*Allee, supra*, 30 Cal.App.5th at p. 1068.) The appellate court concluded that a single individual could not serve as the fact finder in such circumstances, given the "overlapping and conflicting capacities" as investigator, prosecutor, and sentencer. (*Id*. at p. 1069.) Unlike *Allee*, the university's disciplinary process here included an initial investigation by an outside firm, a faculty investigation, a disciplinary hearing by the P&T Committee, and a decision by Chancellor Christ. Evidence was independently reviewed at each of these stages. For these reasons, we conclude that Chancellor Christ's role in AlSayyad's disciplinary process does not support any violation of fundamental fairness.

## III. PREJUDICIAL ABUSE OF DISCRETION

Finally, AlSayyad argues that the three-year suspension imposed by Chancellor Christ constituted a prejudicial abuse of discretion for two

---

[4] Real parties in interest argue that the trial court made a finding that AlSayyad was charged by Vice-Provost Hermalin and that the trial court's finding should be reviewed for substantial evidence. We do not find the argument persuasive as the fact appears to be contained in the background section of the order and does not reflect any finding from the trial court.

reasons: (1) Chancellor Christ did not sufficiently explain her decision; and (2) the penalty was excessive as a matter of law. Neither argument is persuasive.

As to the first argument, Chancellor Christ's August 13, 2018 letter contains a detailed explanation for her decision to impose a three-year suspension. It states: "In considering the evidence in its totality, including the findings and recommendations of the P&T Committee, with which I generally concur, I find that your pattern of unwelcome, manipulative and divisive behavior was harmful to students and other faculty, and your continuing failure to accept responsibility for the impact of your behavior is troubling. My significant experience as a tenured faculty member and campus leader at the highest levels leads me to believe that a more serious sanction than what the hearing panel recommends is required in this matter." AlSayyad offers no authority to support his argument that such an explanation is insufficient. In *Doe v. Regents of University of California*, *supra*, 5 Cal.App.5th at p. 1107, the appellate court determined that the dean had sufficiently explained her decision to increase a student's suspension for sexual misconduct by informing the student that she had " 'reviewed the Hearing Report, applicable statements submitted by both parties, your student conduct record, and the University's Sanctioning Guidelines . . . .' " Here, Chancellor Christ's letter makes clear that she not only reviewed the relevant materials, but also contemplated the violations found by the P&T Committee, the seriousness of the misconduct, the harm caused to the students and faculty, and her experience as a faculty member and campus leader. We conclude that Chancellor Christ sufficiently explained her decision to impose a three-year suspension.

As to the second argument, AlSayyad does not dispute that Chancellor Christ had the discretion to depart from the P&T Committee's recommendation. He also does not dispute that the three-year suspension was within the parameters of potential penalties. Instead, AlSayyad argues that the penalty was "grossly excessive" because it was based on Chancellor Christ's unsupported factual finding that AlSayyad had engaged in a pattern of sexual harassment. As described above, we reject AlSayyad's argument and conclude that Chancellor Christ made no such factual finding. Again, Chancellor Christ's letter makes clear that she decided to impose a three-year suspension based on the "evidence in its totality, including the findings and recommendations of the P&T Committee"; the "unwelcome, manipulative and divisive behavior" that "was harmful to students and other faculty"; and her "significant experience as a tenured faculty member and campus leader at the highest levels . . . ." Her decision is not an exceptional case where "reasonable minds cannot differ on the propriety of the penalty . . . ." (*Deegan v. City of Mountain View*, *supra*, 72 Cal.App.4th at p. 47.) We conclude that the three-year suspension was not a prejudicial abuse of discretion.[5]

## DISPOSITION

The order is affirmed. Respondents are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[5] Given our conclusion, we need not address real parties' argument that AlSayyad's petition improperly sought the reduction of his suspension to one year, instead of seeking to set aside the university's decision and remand for reconsideration.

_____
Jackson, J.


WE CONCUR:


_____
Siggins, P. J.


_____
Fujisaki, J.


A157389/*AlSayyad v. Superior Court (Regents of U. of Cal.)*